The next case today is Rodrigo Rivadeneira et al. v. New Balance Athletics, Inc. Appeal No. 21-1831. Attorney Martin, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the Court, Kevin Martin on behalf of Appellant New Balance. Your Honors, after a full discovery and a multi-day hearing, an arbitrator found that Mr. Rivadeneira and his companies have spent years dodging their obligations to New Balance and filing meritless claims against them. In vacating the arbitrator's award, the District Court made three errors I would like to focus on today. First, the District Court erred by holding that the petition to vacate was timely. Second, the District Court committed error by finding that Superdeporte had preserved an argument that it never agreed to arbitrate any claims against New Balance. And third, the District Court committed error by holding that the arbitrator lacked jurisdiction over both Superdeporte and Mr. Rivadeneira. I would like to start, Your Honors, with the timeliness issue because the petition to vacate was untimely whether Massachusetts law applies or federal law applies. It's clear that everyone understood and agreed that the August 2020 Partial Final Award was a final award with respect to the merits issues that are addressed, thereby triggering the statute of limitations under either Massachusetts law or the FAA. The Partial Final Award itself was unambiguous. At Joint Appendix page 305, it begins by stating, I hereby determine and award. It then provides the ultimate findings and rulings and ends on Joint Appendix page 330 by reciting, I award as follows, explaining what claims, what amounts, and against which defendants amounts were being awarded. The arbitrator retained jurisdiction solely for purposes of certain ancillary issues, attorneys' fees, costs, and interest. The parties understood that that was final within the meaning of unsuitable rules. Superdeporte and Rivadeneira filed motions that only apply to a final award. This is at pages 335 to 343 in the appendix. We did not object that those were premature because there had been no award yet, nor did the arbitrator suggest that the motions that were filed before him were in any way premature. The Superdeporte and Rivadeneira then filed their initial petition to vacate in this court based upon that Partial Final Award. And when they did so, they did not include any disclaimer that they were filing it merely as a protective placeholder. They filed it assuming that the Partial Final Award was a final award. Now, they filed it too late because they clearly seem to think that their post-arbitration motions with the arbitrator had suspended the running of the clock as if it were a Rule 59 motion from a district court action, but that, of course, is incorrect. In my mind, this case looks an awful lot like the University of Notre Dame case that this court decided just a few years ago, in which, in that case, there had been a Partial Final Award. And what the court said was that, in response to the arbitrator issuing an award that resolved only certain of the issues in a final manner, quote, none of the parties responded with a note of disagreement with the arbitrator's description of his conclusions as binding or with the judgment heading of determination in place of preliminary indications, thus indicating that the liability phase was over. And so, in our view, this entire case is untimely because it was filed too late. It wasn't the easiest to follow, but as I read, the final award actually adjusted the principal amount of the contract claim by roughly $25,000. There had been a math error in the original award. The original award said that we were entitled to that $25,000, but then when the arbitrator tallied everything up, he left that out. So, there was not a redetermination of any merits issues. There was simply a correction of a math error in tallying the damages that he had already said we were entitled to, Your Honor. I mean, usually when you see something that says Partial Final Award, the first thought that comes to mind is not that it's final, it's that it's partial final. That's actually quite a common phrase, though. If you look, for example, at even this court's decision in Hart Surgical, the court repeatedly referred to that decision as a Partial Final Award. We cite many cases from around the country in which courts are dealing with partial final awards. There's a good reason for that. For example, the UNSA trial rules expressly provide for awards that deal with only some of the issues before the arbitrator. Nonetheless, those can be final awards within the meaning of UNSA trial rules and within the meaning of this court's jurisprudence. As this court discussed in Fridella, one of the older cases from this court dealing with these issues, there are different policy reasons in arbitration than there are in federal district court litigation when it comes to issues like finality. The parties and the arbitrator may want certain issues to be resolved, for example, liability issues to be resolved immediately and be immediately appealable even as damages remain to be decided. Here, all of the liability and damages issues were decided in that partial final award, and the final award, again, only dealt with issues that are really ancillary like interest and cost in attorney's fees. So, again, and there was no surprise when, again, this is not a case in which the parties thought that there was not a final award. Clearly, they thought there was a final award because, again, in the arbitration, they filed motions that only can be filed with respect to a final award, and they filed their initial petition with the district court based upon the partial final award, not the final award. If they had waited until the final award was issued to file all those motions and to file the petition to vacate in district court, there might be a different case. Maybe they could legitimately argue they were confused, but that's not what happened here, and we're only really fighting about this because they screwed up when it comes to the effect of the motions with the arbitrator, thinking that those stayed the period in which to seek relief from the district court when Fridella explains that that is not the case under the FAA, and it's not the case under Massachusetts law either. So, this was untimely, Your Honors. Even if it were timely, Superdeporte would still need to lose because it did not preserve an argument that it was not properly a party to the arbitration at all with respect to any claims. Again, it seems clear what went wrong here. When you look at the district court's decision, the district court properly understood in her factual recitations that Rubidonera had consistently argued that he was not properly a party to the arbitration at all. As the district court recounts what arguments were made to the arbitrator, the district court correctly identifies that Superdeporte only made arguments that had not agreed to At certain points, it argued that it had not agreed to arbitrate New Balance's claim under the original distribution agreement. At other points, it joined an argument made by all of the defendants to the arbitration that the tortious interference claim really could only be decided in the form of a sanctions motion by the approved courts. Those arguments were all meritless, but for present purposes, what neither of those arguments is an argument that Superdeporte had not agreed to arbitrate anything, nor could it make such an argument because its theory from even before the Peru litigation was that it was party to a contract that had an arbitration clause. It assigned to Mr. Rubidonera its claim under the new distribution agreement, which Mr. Rubidonera argued to the Peru court was a valid and enforceable agreement, and it was on the basis of the new distribution agreement that the Peru court entered a preliminary injunction against New Balance. Superdeporte then consistently argued to the arbitrator that that was a valid and enforceable agreement and sought $10 million in damages and attorney's fees from New Balance based upon the new distribution agreement. It was only after the arbitrator ruled against Superdeporte on the merits of its claim against New Balance that Superdeporte then joined Mr. Rubidonera in arguing that it should not be party to the arbitration at all. One party says we have a contract that has an arbitration clause, and the other party says we don't have a contract. There's no contract, so who cares about what's in it? Usually, absent something unusual in the arbitration agreement, wouldn't that be for a court to find out in the first instance whether there is a contract that has an arbitration clause? I think it could depend, Your Honor, upon who's arguing it. So if the party asserting the claim says there is a valid and enforceable contract... But the other party is saying no, there isn't. How can you compel an arbitration if one party is saying there is no contract at all? Who, me? I never signed it, never saw it. Without first determining whether there is a contract between the parties. Right, so Your Honor, there are two ways this can come up. One is the situation in which the party that says it has a claim under the contract with the arbitration clause is the one that wants the arbitration, and the party against whom that claim is being asserted says I never signed that contract, and therefore I don't need to arbitrate. This is the flip side of that case. They are the party that said there is a contract. We have a claim under that contract against you. They asserted that claim against us in Peru, and they asserted that claim against us in arbitration. Now, we might have said we never signed that contract, and therefore we don't need to arbitrate it. We actually agreed to arbitrate it. And so what really makes no sense is for the party that is asserting they have a contract with an arbitration clause to say we are going to arbitrate this all the way through because the party who says that contract isn't valid has agreed to arbitrate it with us, but then as soon as we lose and there is an award of attorney's fees against us, we say actually because we were wrong, because the contract isn't valid, that means we weren't required to arbitrate it. The arbitrator had no jurisdiction. District court, wipe out the award of attorney's fees against us. It sounds like you are saying that if I say to you, you and I have a contract and it has been an arbitration clause, and your position is we have no contract, you have the option of saying, well, we may have no contract, but I'll at least agree with you we've got an arbitration agreement, and let's go to it to find out if we have a contract. Right, and so that's effectively New Balance's position here. What's your best case to support that that's a way of getting into arbitration rather than court? I think that the best case, Your Honor, would be, for example, the Machado case from the Massachusetts State Courts, because there, I think what the language of the court used was, so again, they are claiming that the new distribution agreement was a valid enforceable agreement, that it was effectively signed. So what the SJC said in Machado was when the signatory's claims against a non-signatory refer to or presume the existence of a written agreement that compels arbitration, the signatory's rendering arbitration appropriate. So if they're saying there's a valid enforceable agreement that has an arbitration clause, then again, we may have the option of getting out of arbitrating it, but they certainly don't. They're obliged to arbitrate that. And if the arbitrator reaches a decision, then they're stuck with the decision that they sought. And again, the district court below seemed to think that this was a case of a party that has been dragged into arbitration asserting a counterclaim because they're already there and they're just preserving their rights. That is not this case. Again, this is a claim that they had already pursued against us in Peru. They had gotten relief on this claim against us in Peru. It was in the arbitration because the arbitrator granted our motion to compel to bring this dispute into the arbitration. And at no point after we did that did Superdeporte ever argue that it was not properly a party to the arbitration at all. Superdeporte did not join that argument when Mr. Ribadonera made it in response to our claims. They did not make that argument in their pleading asserting the counterclaim, even as they once again included the very same lawyer, very same brief. They once again had Mr. Ribadonera argue he should not be there. They did not make that argument with respect to Superdeporte. It only showed up after they lost on their merits. And this matters not only for the counterclaim, but also for their claims against us, which go largely unaddressed in the decision below, but also were vacated. The third point I'd like to address, Your Honor, is the question of jurisdiction, which I think we've already addressed to some extent. But the jurisdictional decision was wrong both with respect to Superdeporte and Mr. Ribadonera. It was wrong with respect to Superdeporte because Superdeporte consistently alleged that it was party to a contract with an arbitration clause and asserted that counterclaim against us. It was wrong with respect to Mr. Ribadonera because he assigned to himself claims both by PSG and by Superdeporte that were subject to arbitration clauses and asserted them against us in Peru. And then the assertion of that claim in Peru gave rise to our tortious interference counterclaim, which certainly was part of the same relationship and therefore subject to the relationship arbitration clause at a minimum in the PSG arbitration agreement, but also in the Superdeporte arbitration agreement. Let me interrupt you and ask if Judge López has any questions of you. Let me show I understand the role of the counterclaims in this dispute. Am I correct that the counterclaims found their way into the arbitration proceedings only because the arbitrator, noting that claims were brought in the courts of Peru, one of which was based on an assertion that this new distribution agreement was in effect executed. The other one was sort of an alternative claim. Well, if it wasn't executed, it wasn't executed because of the bad faith of Superdeporte and perhaps Mr. Ribadonera. I'm not sure about that. But those counterclaims only found their way into the arbitration proceedings because the Superdeporte or Mr. Ribadonera actually filed them in the arbitration proceedings. Could you clarify that point for me, please? Sure. So the Superdeporte counterclaims were identical to the claims that were asserted in the Peru litigation by Mr. Ribadonera as the assignee of claims by PSG and by Superdeporte. So New Balance filed a motion in the arbitration to compel arbitration of the claims that had been filed by Mr. Ribadonera in Peru. He opposed that motion and the arbitrator agreed with us that the Peru claims really belonged in the arbitration. After the Peru claims were brought into the arbitration based upon our motion to compel, we then named Superdeporte as an additional defendant respondent in the arbitration. At that point, they then filed a counterclaim by Superdeporte, effectively making the same claims that were the Peru claims that had previously been asserted by Mr. Ribadonera and in the arbitration by PSG. So it's the logic of your argument that if they asserted in the courts of Peru that there was an executed agreement which contained an arbitration clause comparable to the one that had been in the original agreement, that they are then stopped in the arbitration proceedings from arguing that they are not obligated to arbitrate because they were claiming an executed contract that actually contains such an arbitration clause. Is there a kind of a stopple argument? It's either a stopple or assumption by asserting the existence of a contract with an arbitration clause and both seeking and obtaining relief in the Peru courts under that agreement. This is at page 325 in the Joint Appendix where the arbitrators were counting the history of the Peru litigation and observed that it was based upon the Peru courts' belief that in fact there was an executed new distribution agreement that it granted the preliminary injunction, but because they asserted the existence of this contract, they are now obliged to arbitrate the claim. Again, assuming that we're willing to do so, maybe we can get out of it, but we chose not to. But they cannot get out of it having asserted the existence of it and pursued relief under it. Thank you. Thank you, Mr. Martin. Mr. Cooper, please introduce yourself on the record to begin. May it please the Court, David Cooper on behalf of the appellees, Rodrigo Ribadonera and Superdeporte. New Balance doesn't dispute the fundamental point here, which is that the appellees never agreed to arbitrate claims with New Balance. There was no valid agreement to arbitrate, and that's the key question here, because arbitration fundamentally is a matter of consent. You cannot force a party to arbitrate if they do not agree to do so, and that is exactly what New Balance is trying to do here. And because they don't dispute the existence of an actual agreement to arbitrate, they're forced to resort to doctrines like timing and waiver and estoppel, but the District  And let me start with the timing issue. So, my friend's argument essentially comes down to the idea that everyone knew that this partial final award was a final award. That's incorrect. And you can start with the arbitrator himself, because the arbitrator said repeatedly that this was a partial award, that there would be a forthcoming final award, that the parties had to brief other issues, that there were still questions of the amount of interest. And this wasn't simply a question of sort of, you know, 4% prejudgment interest or something like that. This was interest required under the agreement itself. In other words, the contractual damages required by the agreement that required extensive briefing from the parties. So, the arbitrator repeatedly said, this is partial. There's going to be a final award. Let's get more briefing on these very substantive issues before I issue a final award. Mr. Martin just said that there are lots of instances in which partial, expressly labeled partial awards are deemed to be appealable. What's your response to that? So, as far as I'm aware, there's no case suggesting that a partial final award is appealable where there are substantive issues still to be decided and the parties did not agree to bifurcate. In every case that I'm aware of, one of those two things or both of those things is true. And this court's Hart decision and Providence decision are the perfect exemplars of that. This court was very, very careful to say that in those cases, there was an intent to bifurcate. So, the parties knew and were on notice that the partial award should be treated as a final award. And the reason why this court did so was because the parties there did move to vacate immediately after the partial award, after they had agreed to bifurcate. And this court correctly felt that they should have the right to do so. But this court also was very careful to say, but does that does not mean that a party must come to court when there's only a partial final award? And that is especially true in a case like this one, where there was undisputed that there was no agreement to bifurcate, no discussion of bifurcation in any way. And so, this is a kind of situation where we want a clear rule. We don't want traps for the unwary. And we certainly don't want parties running to court every time there's something that could even theoretically be deemed after the fact to be a final award, where there is no agreement to arbitrate, where the arbitrator repeatedly says that there's more to be done and that there's going to be a final award in the future. That is the situation where a party has every right to wait until there's a final award. And it benefits the parties and the court to do so rather than to have sort of repeated appeals in the same case. I'd also... On the question of whether there's an arbitration agreement, the first sentence or two you mentioned, as I understand the scenario being put forward by the other side, we have a contract that says, I'll purchase from you and you will pay for me a dozen apples for $10. Clause two, if we have any dispute about the apples or the time of payment, we'll arbitrate it. As I understand what you're saying is, you could sue me on the contract if we had a contract like that, even though I'm saying I never signed it and I'm not bound by it. And you could say, I am bound by it, so I owe you more for the apples. And yet you could avoid the arbitration clause simultaneously as you're suing me under that contract. I'm not sure that... What sense is there in that? So I think there are a couple of points here. The first is that we did not go to the arbitration because we wanted to arbitrate. We went to the arbitration. This goes to Judge Lopez's question because the arbitrator said... I'm not talking about going to arbitration. As I understand it, your client said, we want to enforce and recover damages under this contract. Yes. And that contract has an arbitration clause in it. It does. How can you take the good without the bad? How can you... I think that's exactly the point. Either the contract exists and in which everyone must be bound by it, or the contract does not exist. And then no one is bound by it. You bring a claim that is maintaining it exists. We brought a claim maintaining it exists. If you prevail, you win. If we prevail, we win. You're saying if you lose, you can just say, well, since there was no contract, we didn't have to arbitrate, so the arbitration doesn't count. But that's always true when a party objects to jurisdiction or arbitration. That is, if they object to jurisdiction and arbitration, but they win, then they win. If they object to jurisdiction... But they're not saying that they can participate in the policy, the contract. They can enforce the contract. But there are a couple clauses we don't like, and so we're not going to be bound by the arbitration clause. Unless, of course, we win, then we're happy to be bound by the arbitration clause. That seems a little squirrely. We never said we'd be happy to be bound by the arbitration clause if we win. That's first of all. We brought it as a counterclaim in the arbitration because we... We can enforce just part of the policy, but the other side can't enforce the other part. That's like saying we want to just get the apples but not have to pay the dollars. But the bottom line is that either the contract exists and we're all bound or we're not bound. And right now, as it stands, New Balance claimed, argued that they were not bound, and they won. And they got an arbitration award. They've confirmed that arbitration award as to PSG, and that is done. There is no new agreement because they made an argument. They won their argument. The new agreement does not exist. What can't happen is that New Balance can say, you, Super Deporte, and Mr. Ribadonera are bound by this new agreement, but we are not. That is the one thing. And because, remember, they're not bringing this under a claim of you signed this new agreement, and therefore you're bound by it, you agree to arbitrary. They're bringing it through either waiver or estoppel or something like that. And if you're talking about estoppel, estoppel would require that all parties are either bound by the agreement because we're assuming it exists or all parties are not bound. What estoppel cannot allow is for New Balance to say this agreement does not exist. Then they win the agreement, the idea that the agreement does not exist. But we are bound by the terms of that agreement, but they are not bound by the terms of that agreement. There is no case that we are aware of ever suggesting that. And it flies in the face of what equitable estoppel is supposed to be, which is that we can't have people picking and choosing the parts of the agreement that they like and don't like. And that's exactly what they're doing. They're saying we like the arbitration clause. We're going to say that you're bound by that. But the rest of it, we're just going to throw away. And this also goes to the question that you asked, Judge Kayada, which is, well, who is deciding this and when are we deciding it? Because I understand that in a case where the arbitrator was the ultimate decision maker about jurisdiction, this would create some complications. But here all the parties agree that this is de novo review for the for the district court to decide whether or not the arbitrator or jurisdiction. What's the general rule when one part there's a contract? It has an arbitration clause in it. Completely clear. One person says we have that contract. I signed it. And then even though you didn't sign it, you deem to be bound by it. And the other person said, I didn't sign it. Where is the question of whether they're bound by that contract adjudicated? So it depends on whether or not the parties agreed to have arbitrability decided by the arbitrator. No, assume assume they didn't assume they didn't. Then that's decided by the district court de novo. And that's and that's and that's settled law. And so then the district court here de novo decided, OK, whether there was a contract. Is there a contract to the parties agreed to arbitrate? And in the district court here. There was no dispute. We accepted for purposes of at this point that there was no new agreement and that there was no, therefore, no agreement to arbitrate. What usually happens is the party that doesn't want to arbitrate goes right to the district court, asked to stay the arbitration and asked for an adjudication. They're not bound by it. That didn't happen here. That did not happen here. And and I think there are two points on that. One is that it's very clear as a matter of law that we don't have to do that. That is, we have a right to object in the arbitration to jurisdiction and then go to the district court. And the second thing is here. It makes sense because there was a party to the arbitration, PSG, who legitimately signed the original distribution agreement. And so, you know, you have a situation where you wouldn't been stopping the whole arbitration, be stopping part of it. And so it made sense to go forward in that way. So let me speak briefly as well on the issue of waiver, because my friend simply ignores sort of the language here. That is the critical language. And I call court's attention to page 488 of the joint appendix, where we say, quote, the tribunal does not have jurisdiction over Mr. Ribadiera or Superdeporte. Mr. Ribadiera and Superdeporte were never part of the distribution agreement. So there was no qualification. There was no hesitation. There was no some claims and not others. This was a clear, unconditional statement that the arbitrator did not have jurisdiction over Mr. Ribadiera or Superdeporte. The only thing they say on this issue is that, well, you filed a counterclaim. And it's true that we did file a counterclaim. But in that counterclaim, we never suggested that we were acceding to the jurisdiction of the arbitrator. And if there were any doubt on this shortly after our response to the counterclaim, this is page 195 to 96 of the joint appendix. We said, quote, this tribunal has no jurisdiction to arbitrate any claims. So at every point in these proceedings, we made perfectly clear that we objected to the jurisdiction of the arbitrator. We had every right to try to argue our claims regardless of that objection. And part of that argument was to raise this counterclaim because the arbitrator had already held that he had jurisdiction over the Peru claims and, therefore, had jurisdiction over the claims at issue here. And, therefore, we had every right and every necessity to raise the counterclaim with respect to that. If you had gone the normal route that we talked about earlier of going to the court first, what would you have said to the court? How would you have gone into the court and said there's no duty to arbitrate when you're simultaneously saying we have a contract that has an arbitration clause in it? So I think what would you have said to the court if you'd gone to try to stop the arbitration? So I think it wouldn't have come up quite in if that occurred. It wouldn't have come up quite in that context. You couldn't have gone to the court, could you, given your position that there's a contract that has an arbitration clause in it? We still could have gone to the court because the court would have said we could we can make an alternative argument. That is, we were not covered by the original distribution agreement because we did not sign it. We believe there is this new distribution agreement. They contend that it doesn't exist. This court now has to decide whether it does or does not. And if it does, then we would be arbitrating it. If it does not, then we wouldn't. And that's and that's exactly the point, which is we have standing to go in and say there is a contract. Well, I think the question is you're saying there is an arbitration clause. And so if I'm the court and says, well, if you're insisting there's an arbitration contract with an arbitration clause, what are you here talking to me about? Because because the problem is that they say that there's not right. I mean, it's not I think fundamentally the question isn't who's arguing what the question is, does an agreement exist? Is there an agreement to arbitrate? Yes. They argue about the first agreement. They dispute the second. We are dispute the first. We argue about the second. But the bottom line is that at some point someone has to decide whether or not there is an agreement. And if there is one, then that's fine. Then we then we prevail in our counterclaims. And they or they have these duties. And there's a question of who violated those duties. That's fine. Let me see if Judge Lopez has any questions. Yes. Thank you. I'm trying to get a clear picture of the scope of these counterclaims. I'm getting the impression that the counterclaims that were litigated in the arbitral forum, they were a mix of claims that were initially brought in the courts of Peru. The arbitrator said, though, in my judgment, those have to be subject to arbitration. So those those claims now come before the arbitral forum. They're considered counterclaims. I got the impression that you then augmented those claims with additional counterclaims. So that we have we have counterclaims that are a mix. Those that were filed in Peru now counterclaims in the arbitral forum, plus some additional counterclaims. Is that correct? So the only additional counterclaim beyond those that would be considered the sort of the the Peru claims that the arbitrator said he had jurisdiction over were brought by PSG. So PSG also brought counterclaims on behalf of itself, but not also with Super Deporte. But the only counterclaim brought by on behalf of PSG and Super Deporte was with respect to the Peru claims. And as you suggest, that was brought because the arbitrator already decided that he had jurisdiction over the Peru claims. So there was nowhere else to go with those claims. But that arbitrator, at least in that instance. Did Super Deporte or Mr. Ribonera make any claims beyond those that have been brought in Peru? Any claims in the arbitral forum on the basis of claiming a breach of a contract that included an arbitration provision? No, they didn't make a breach. No, they did not make a breach of contract claim. See my time's up, but if I'll finish answering the question. Yeah, PSG brought a breach of contract claim that that was the only breach of contract claim brought. There were Peru claims with regard to the that were based on the new agreement that were brought on behalf of PSG and Super Deporte. But that was not based on a breach of contract. And I'll close by saying that arbitration is not supposed to be a trap for the unwary. It's not supposed to be that we play these games of who's a stopped, what's the time. It's supposed to be a matter of agreement here. There was no agreement to arbitrate. Everyone at this point understands that's the case. The district court decided de novo that there was no such agreement and therefore we should not be bound to arbitrate here. Thank you. Thank you. I don't believe you saved any rebuttal time, Mr. Martin. That concludes argument in this case and in these cases today. All rise. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court.